Reynolds Metals Company appeals from a class-certification order obtained by the plaintiffs in this case, who are former salaried employees of Reynolds ("the plaintiff employees"). We vacate the class-certification order and remand.
 I. Facts and Procedural History
Jim W. Hill and Charles D. Harvey filed a class action on behalf of 279 former salaried employees of Reynolds who sought severance benefits when Reynolds sold the Reynolds Alloys Complex in Listerhill ("the Alloys facility") to Wise Alloys, L.L.C. ("Wise"). The complaint alleges breach of contract, fraud, and unjust enrichment. Reynolds contends that its Termination Allowance Policy ("TAP") explicitly *Page 102 
defined severance benefits for salaried employees and that the plaintiff employees are not due the benefits they are seeking.
In the 1990s, Reynolds began a restructuring process, the goal of which was to divest itself of several facilities throughout the country. As a part of this process, Reynolds began negotiating in 1997 with the Aluminum Company of America ("Alcoa") to sell the Alloys facility. While the negotiations were in progress, Wilt Wagner, then a Reynolds vice president, visited the Alloys facility to announce that Reynolds had entered into a sales agreement with Alcoa, pursuant to which Reynolds would sell the Alloys facility to Alcoa, although the sale was not yet complete. On April 21, 1997, in contemplation of the sale of the Alloys facility to Alcoa, Wagner held what the plaintiff employees describe as two "town-hall meetings" to explain how the contemplated sale would affect Reynolds's employees. Wagner spoke to groups composed of both hourly and salaried Reynolds employees. The parties dispute the exact nature of Wagner's remarks. In their brief to this Court, the plaintiff employees contend that during those speeches, Wagner stated that "whether the Alloys plant was ultimately sold or closed, Reynolds would treat either course of action as a `plant closing' for benefit purposes." In its brief, Reynolds contends that Wagner "stated that the Alcoa sale would be treated as a plant closure only with respect to the benefits section of the hourly union contract." Reynolds says that in December 1997, the federal government halted the sale of the Alloys facility to Alcoa. Reynolds then resumed marketing the facility.
Reynolds explains that the term "plant closure" triggered certain retirement benefits for hourly workers under their collective-bargaining agreement, but that it had no effect on salaried employees. Severance benefits for salaried employees were controlled by Reynolds's TAP. The TAP stated that termination allowances were not payable for "employment transfers to a Reynolds Subsidiary or to a Successor to Reynolds." The TAP also stated that a salaried employee would not be eligible for a termination allowance if that employee was offered and refused employment with a successor to Reynolds. In early 1997, Reynolds supplemented the TAP with a Salaried Employee Enhanced Termination Package ("ETP"). The ETP increased the severance benefits for salaried employees, but contained the same eligibility requirements as did the TAP.
By early 1999, Reynolds had negotiated the sale of the Alloys facility to Wise. Reynolds says that before the sale to Wise was consummated, it distributed to its salaried employees at the Alloys facility a summary of benefits; that summary stated that all salaried employees who accepted employment with Wise, or who were offered and refused employment with Wise, would not be eligible to receive severance benefits under the TAP and the ETP. In February 1999, Buddy Keenum, Reynolds's former director of human resources, met with the employees at the Alloys facility regarding the effect of the sale of the Alloys facility to Wise on employee benefits. Reynolds says that during that meeting, Keenum was asked several times whether the salaried employees would be eligible to receive severance benefits as a result of the sale to Wise, and that he responded by referring to the TAP and the ETP.
On March 31, 1999, Reynolds sold the Alloys facility to Wise. As a part of the sale, Reynolds says it negotiated a clause in the sales agreement that stated that Wise could offer employment to some or all of Reynolds's salaried employees and offer whatever compensation and benefits *Page 103 
Wise deemed appropriate. Reynolds says that the majority of its salaried employees at the Alloys facility were offered, and accepted, employment with Wise. On March 31, Reynolds terminated the employees. On April 1, with Wise continuing operation of the Alloys facility, the employees reported to work with Wise and continued to do their jobs.
The plaintiff employees who accepted jobs with Wise submitted formal requests to Reynolds for termination benefits. Reynolds summarily denied those requests. The plaintiff employees appealed the denials by sending letters, again requesting termination benefits, but Reynolds again summarily rejected their claims. In August 1999, Hill, Harvey, and Richard Sturtevant filed a complaint, alleging that Reynolds had refused to pay them severance benefits as Wagner promised it would in the 1997 meetings. The complaint also indicated that the named plaintiffs were asserting claims on behalf of other similarly situated persons. Reynolds removed the case to federal court, arguing that the plaintiff employees' claims were preempted by ERISA. The federal court rejected Reynolds's argument and remanded the case to state court. Sturtevant then withdrew as a plaintiff.
After the parties conducted discovery, the trial court held an evidentiary hearing on January 5, 2001, regarding class certification. The trial court admitted into evidence extensive documentation offered by both parties, and issued an order certifying the class on January 11. Reynolds appeals pursuant to § 6-5-642, Ala. Code 1975, authorizing an immediate appeal of a certification order.
 II. Satisfaction of Rule 23(b)(3), Ala.R.Civ.P., Criteria
Initially, "[i]n order to obtain class certification, the plaintiff must establish all of the criteria set forth in Rule 23(a)[, Ala.R.Civ.P.,] and one of the criteria set forth in Rule 23(b)." Ex parteGold Kist, Inc., 646 So.2d 1339, 1341 (Ala. 1994).
 "Rule 23(a) provides four prerequisites to bringing a class action: 1) the class must be so numerous that joinder of all members is impracticable; 2) there must be questions of law or fact common to the class; 3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and 4) it must appear that the representative parties will fairly and adequately protect the interests of the class.
"Rule 23(b) provides as follows:
 "`An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 "`(1) the prosecution of separate actions by or against individual members of the class would create a risk of
 "`(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 "`(B) adjudications with respect to individual members of the class which would as a [practical] matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 "`(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 "`(3) the court finds that the questions of law or fact common to the *Page 104 
 members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.'"
646 So.2d at 1341.
As did the defendants in Compass Bank v. Snow, 823 So.2d 667 (Ala. 2001), Reynolds argues, in addition to its argument that the plaintiff employees failed to satisfy the requirements of Rule 23(a), that the trial court erred in certifying the plaintiff employees' breach-of-contract, fraud, and unjust-enrichment claims pursuant to Rule 23(b)(3), because, it argues, numerous individual issues predominate and make the class unmanageable. Therefore, Reynolds contends, the plaintiff employees did not produce sufficient evidence to support a finding that common questions of fact or law predominate and that a class action is superior to other methods of adjudication, as required by Rule 23(b)(3).
We concluded in Compass Bank that we will apply "an abuse-of-discretion standard of review to a trial court's class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision." 823 So.2d at 671. We further stated in Compass Bank:
 "[A]n abuse of discretion in certifying a class action may be predicated upon a showing by the party seeking to have the class-certification order set aside that `the party seeking class action certification failed to carry the burden of producing sufficient evidence to satisfy the requirements of Rule 23.' Ex parte Green Tree Fin. Corp., 684 So.2d 1302, 1307 (Ala. 1996). Thus, we must consider the sufficiency of the evidence submitted by the plaintiff[s]."
823 So.2d at 672. We conclude that the plaintiff employees did not produce sufficient evidence to satisfy the requirements of Rule 23(b)(3); therefore, we do not address Reynolds's arguments regarding the requirements of Rule 23(a).
 A. Predominance
The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." AmchemProds., Inc. v. Windsor, 521 U.S. 591, 623 (1997). It is "far more demanding" than the commonality requirement of Rule 23(a). Id. at 624. In deciding whether common questions of fact or law predominate, a court must examine each plaintiff's cause of action and consider "what value the resolution of the class-wide issue will have in each class member's underlying cause of action." Rutstein v. Avis Rent-A-Car Systems, Inc.,211 F.3d 1228, 1234 (11th Cir. 2000), cert. denied, 532 U.S. 191,121 S.Ct. 1354 (2001).[1]
 1. Fraud Claim
The elements of a fraud claim under Alabama law are: *Page 105 
 "(a) that the defendant made a false representation concerning a material fact; (b) `which (1) the defendant [either] knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling [the] plaintiff that [the] defendant had knowledge that the representation was true while not having such knowledge'; (c) which the plaintiff [reasonably] relied upon; and (d) `damage to the plaintiff proximately resulting from his reliance.'"
Ex parte Household Retail Servs., Inc., 744 So.2d 871, 877 (Ala. 1999) (quoting Cato v. Lowder Realty Co., 630 So.2d 378, 381 (Ala. 1993)) (bracketed language added in (c)). In Household Retail Services, the Court applied the "justifiable-reliance standard" established in Hickoxv. Stover, 551 So.2d 259 (Ala. 1989), overruled, Foremost Insurance Co.v. Parham, 693 So.2d 409 (Ala. 1997), because the action was filed before the Court returned to the "reasonable-reliance standard" in fraud cases in Foremost. In this case, of course, we will apply the reasonable-reliance standard.
In Household Retail Services, we noted that as a general rule, courts have denied certification of classes involving fraud claims based on oral communications because of the individualized nature of the communications between the class members and the defendants. 744 So.2d at 878. We also stated in that case, however, that a plaintiff could have a class action certified on fraud claims based on oral misrepresentations by showing that the oral misrepresentations were uniform. Id. The plaintiff employees argue that their fraud claims are appropriate for class treatment in this case because Wagner's statement, made to all of the putative class members in the town-hall meetings, was such a uniform oral representation. Even if we were to consider Wagner's statement as such a uniform representation, however, the plaintiff employees cannot satisfy their burden of proof as to reliance without the necessity for individual testimony from each employee.
Neither of the class representatives testified that he relied upon Wagner's statement by continuing his employment with Reynolds in order to receive the severance benefits allegedly promised. Harvey testified that he stayed with Reynolds after Wagner's statement because he needed four more months of work to become eligible for retirement. Hill testified that he stayed with Reynolds in the hope that he would receive a job in the future with Reynolds or a subsequent purchaser. Proof of common reliance by the plaintiff employees on Wagner's oral representation is further defeated by their testimony that they relied on statements by managers other than Wagner to support their belief that they were entitled to severance benefits. To determine whether any of the putative class members reasonably relied on Wagner's statement, it would be necessary for the trial court to hear testimony from each employee as to whether he or she relied on Wagner's statement in deciding to continue employment with Reynolds, and whether he or she relied on any other statements or communications, and if so, what those statements were and when and by whom they were made. Consequently, the individualized issues necessary to each class member's fraud claim heavily predominate over any common issues that may exist.
 2. Breach-of-Contract Claim
The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages. State Farm Fire Cas. Co. v. Slade, 747 So.2d 293, 303 (Ala. *Page 106 
1999). In support of their claim that Reynolds had contracted with them to provide severance benefits, the plaintiff employees rely upon Wagner's statement at the "town-hall meetings" that Reynolds would treat any proposed sale of the business as a "plant closing" for purposes of employees' termination benefits. The plaintiff employees claim that Wagner's statement was a promise of an additional benefit to them as an incentive for them to continue working for Reynolds during the period the sale of the Alloys facility was being negotiated. Despite the fact that they continued their employment with Reynolds until the Alloys facility was sold to Wise, Reynolds, the plaintiff employees say, did not provide the severance benefits the plaintiff employees claim Reynolds promised them. The plaintiff employees contend that their breach-of-contract claim can be tried as a class action because, they say, it involves a uniform statement made to all of the class members at the same time.
In concluding that the plaintiff employees' individual interpretations of Wagner's statement did not defeat the predominance requirement, the trial court, in its class-certification order, stated:
 "Wagner stated that the sale of the plant would be treated as a `plant closing' for benefit purposes. Thus, the terms of the alleged contract are certain and unambiguous. The Court finds that should the Plaintiffs prevail, they will be due the benefits that they would have received had the Alloys Plant actually been closed or shut down rather than sold. It is not necessary that every member of the class know the specific benefits due in a plant closing situation. Rather, it is sufficient that they were promised a specific type of treatment."
(Emphasis added.) Whether a contract is ambiguous is a question of law.Alfa Life Ins. Corp. v. Johnson, 822 So.2d 400 (Ala. 2001). Therefore, our review of this holding by the trial court is de novo.
Reynolds argues that in order for Wagner's statement to constitute a promise to the employees binding Reynolds, the plaintiff employees must prove that each of the 279 putative class members (a) was present when Wagner made the alleged statement, (b) uniformly understood and/or interpreted Wagner's alleged statement, (c) uniformly understood Wagner's alleged statement to apply to any sale of the facility, not just the proposed sale to Alcoa, and (d) uniformly relied upon and/or expected the same thing as a result of the alleged statement. Reynolds claims that Wagner's statement was directed only to the hourly employees present at the meetings, not to the salaried employees who were present; it argues that there may be class members who correctly understood Wagner's statement to refer only to hourly employees. Reynolds also argues that it is logical to expect that because Wagner's statement was made in 1997 in connection with the proposed sale to Alcoa, there may be class members who understood the statement to apply only to that sale, and not to the eventual sale in 1999 to Wise.
At the class-certification hearing, the plaintiff employees presented only the deposition testimony of the two class representatives, Hill and Harvey, and 12 affidavits from putative class members. According to the deposition testimony of the class representatives, they each understood Wagner's statement differently. When Harvey was questioned, he initially could not recall any discussion concerning the payment of severance benefits, and he testified that he was never told by Wagner or anyone else that salaried workers were entitled to severance benefits outside the ETP. When Hill was asked if he could recall what Wagner *Page 107 
had said, he stated that Wagner had said that the sale of the plant would be treated as a plant closure and that "any benefits due employees would be due as plant closure benefits." He could not remember whether Wagner had used the word "severance."
Even a contract otherwise clear on its face may be ambiguous if collateral matters render its meaning uncertain. Carnival Cruise Lines,Inc. v. Goodin, 535 So.2d 98, 101 (Ala. 1988). In Davis v. Sherrill,540 So.2d 708, 711 (Ala. 1989), this Court stated:
 "It is well settled that parties are bound by their contracts, and that where the terms are clear and unambiguous parol evidence is not permitted. However, where the contract is ambiguous and uncertain as to what the parties intended, as this one is, then parol evidence is permitted, not to change the terms of the agreement, but to establish the true intent of the contracting parties."
(Emphasis added.)
Reynolds has demonstrated that individualized evidence from each class member is necessary to determine what contract, if any, exists between it and the class member. The trial court erred in concluding that the terms of the alleged contract were "certain and unambiguous." This Court has previously rejected class certification in a breach-of-contract action where the terms of the contract were not clear or where individual testimony would be necessary on the contract claims. See Compass Bank, supra; Mann v. GTE Mobilnet of Birmingham, Inc., 730 So.2d 150 (Ala. 1999); Ex parte Green Tree Fin. Corp., 723 So.2d 6 (Ala. 1998).
Moreover, we do not here deal with a contract where a party's acceptance is easily manifest from the presence of a signature on a document. The alleged promise required conduct-staying on as an employee-to manifest acceptance. Because the act of staying on could have been coincidental rather than the result of the alleged promise, absent proof that each plaintiff employee remained in Reynolds's employment so as to accept the alleged promise, individual evidence from each class member would be necessary to determine whether his or her conduct in fact constituted an acceptance. Our previous discussion regarding the plaintiff employees' failure to prove predominance in the fraud claim insofar as staying on the job could be taken as reliance is analogous here in the context of the propriety of equating remaining on the job as acceptance of the alleged contract.
Two factors distinguish this case from Hoffman-LaRoche, Inc. v.Campbell, 512 So.2d 725 (Ala. 1987), and its progeny, including AmocoFabrics Fibers Co. v. Hilson, 669 So.2d 832 (Ala. 1995) (which Justice Johnstone relies on in his dissent). First, the alleged offer in this case was an oral statement that we have determined was ambiguous, as opposed to certain and unambiguous language included in a written employee handbook. Second, in none of the employee-handbook cases decided by this Court was there any evidence indicating that the discontinuance of business was within the contemplation of any party when the proposed contract was tendered. See Hoffman-LaRoche, 512 So.2d at 726- 27; Bellv. South Central Bell, 564 So.2d 46 (Ala. 1990); Stinson v. AmericanSterilizer Co., 570 So.2d 618 (Ala. 1990); Evans v. NationalMicrosystems, Inc., 576 So.2d 207 (Ala. 1991); Mooney v. Harco Drug,Inc., 611 So.2d 235 (Ala. 1992); Paseur v. City of Huntsville,642 So.2d 969 (Ala. 1994); and Amoco Fabrics, 669 So.2d at 833- 34. In those cases, the alleged offer was made in the context of a business that was a going concern; there was no realistic *Page 108 
basis upon which to believe that an employee might be considering options other than remaining employed with the same employer. In such a circumstance, continuation of employment would be a consideration that would not reasonably require evidence regarding each employee's motivation for staying with the employer.
In Amoco Fabrics, the dispute between the employees and the company over vacation pay did arise after Amoco Fabrics sold its plant to another company. However, at the time the company established and distributed the disputed vacation policy in a 1989 handbook, no sale of the plant was contemplated. Therefore, at the time the terms of the offer of vacation pay were tendered to the employees, their acceptance of the offer by retaining employment and the actual performance that supplied the necessary consideration occurred under circumstances where it was neither reasonable nor necessary to inquire into their motivation in continuing their employment with Amoco Fabrics. Here, on the other hand, where there was uncertainty as to whether the Alloys facility would be sold or closed, when either would occur, or whether jobs would be available with a new company in the event the facility was sold, evidence from individual class members is reasonably required in order to establish each plaintiff employee's motivation for continuing employment with Reynolds.
 3. Unjust-Enrichment Claim
Finally, as to the plaintiff employees' unjust-enrichment claim, the trial court noted that the kind of proof necessary to establish liability for such a claim would be the same as that presented in the breach-of-contract and fraud claims. Having found that individual issues of proof predominate in those claims, we find that individual issues of proof would predominate in the plaintiff employees' unjust-enrichment claim as well.
After reviewing the evidence presented in this case, we conclude that the plaintiff employees failed to satisfy Rule 23(b)(3)'s predominance requirement as to all of their claims.
 B. Superiority
When individual issues predominate over common issues, the difficulties in the manageability of a class action become obvious. "The greater the number of individual issues, the less likely superiority can be established." Castano v. American Tobacco Co., 84 F.3d 734, 745 n. 19 (5th Cir. 1996). As we have noted above, several issues in this case would require extensive individual examination of each putative class member. A determination whether the putative class members' reliance was reasonable, for example, would need to be "based on all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." Foremost Insurance, 693 So.2d at 421. See also CompassBank, supra, in which we concluded that the predominance of individual issues over common ones destroyed the manageability of the action as a class, and therefore prevented the plaintiffs from establishing that class-action treatment of their claims was superior to individual actions.
After reviewing the evidence presented in this case, we conclude that the plaintiff employees failed to satisfy Rule 23(b)(3)'s superiority requirement as to their claims.
 III. Conclusion
The trial court erred as a matter of law in holding that the contract here was "certain and unambiguous" and otherwise abused its discretion in certifying a class in this case pursuant to Rule 23(b)(3). We *Page 109 
vacate the class certification order and remand the cause for an order or further proceedings consistent with this opinion. Because we conclude that the class-certification order must be vacated, we need not address the other issues raised by Reynolds.
ORDER VACATED; REMANDED.
Moore, C.J., and Houston, See, Brown, Harwood, Woodall, and Stuart, JJ., concur.
Johnstone, J., concurs in part, dissents in part, and expresses no opinion in part.
[1] Because the Alabama Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure, cases construing the federal rules are considered authoritative in construing the Alabama rules. Cutler v.Orkin Exterminating Co., 770 So.2d 67 (Ala. 2000).