[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 348 
Sherry Harper, the plaintiff in the underlying action, appeals from a summary judgment in favor of Winston County and Sandra Wright, the defendants below. We affirm the trial court's judgment as to Winston County and we reverse the judgment as to Wright.
 Facts and Procedural History
Harper was employed by the Winston County Department of Revenue. Sandra Wright, the revenue commissioner of Winston County, was her supervisor. According to Harper, on March 16, 2000, Wright threatened Harper with termination of her employment because Harper was supporting Roger Hayes, the incumbent chairman of the Winston County Commission, for reelection to that position. Harper states that Wright told her that Wright, "and not Commission Chairman Hayes, was the only person who could fire Harper, and that she would `get' Harper if Harper voted for Roger Hayes." (Harper's brief p. 10.)
In late April 2000, Wright held a meeting of Department of Revenue employees to discuss tardiness and the need for employees to report to work promptly at 8:00 a.m. so that they would be available to assist customers at that time. Harper states that, on May 9, 2000, she reported to work at 8:03 a.m., and that Wright spoke to her about her tardiness.[1] Harper claims that during that conversation Wright "jumped up and was waving her hands in the air," and that Harper responded, telling Wright that, in light of the fact that other employees had been tardy, she believed Wright was treating her differently because of her support of Hayes. The conversation began to get heated, and Wright stated, "Sherry come to the back," indicating that Wright wanted Harper to go to Wright's office. Harper later testified at her post-termination hearing that when she refused to go with Wright, Wright "reached — jerked for [her] — jerked [her] arm and tried to pull [her] back." Harper admits that when she continued to resist going to Wright's office, Wright let go of her arm. The next day, May 10, 2000, Wright attempted to have a private meeting with Harper. Harper refused to attend the meeting without a witness present, because, she says, of Wright's previous threat to "get" Harper and because of the incident that had occurred the day before. On May 10, 2000, Wright terminated Harper's employment with the Department of Revenue, and she wrote the Winston County Commission to advise it that her termination of Harper's employment was effective that day.
Harper had filed on May 9, 2000, a complaint with the Winston County Commission claiming, among other things, that Wright had "repeatedly threatened [her] with termination of [her] job due to [her] political preference" and that Wright had "grabbed [her] arm and tried to force [her] to go with" Wright. On May 10, 2000, *Page 349 
Harper received a written notice stating the reasons for her dismissal. After her termination, Harper received a notice that a "post-termination hearing" would be conducted before a hearing officer appointed by the Winston County Commission. The hearing was held on June 13, 2000.
On January 30, 2001, Harper sued Winston County and Wright, alleging that the termination of her employment was in retaliation for her exercising her First Amendment right to free speech, that the County had denied her due process of law in terminating her employment, that the County had breached her employment contract, and that Wright had committed an assault and battery against her. Because the complaint presented a federal question, the case was removed to the United States District Court for the Northern District of Alabama pursuant to28 U.S.C. § 1441(c). The district court entered a summary judgment in favor of Winston County and Wright as to Harper's federal free-speech and due-process claims, declined to exercise supplemental jurisdiction over Harper's remaining state-law claims, and remanded the case to the Winston Circuit Court for consideration of the state-law claims.
On March 26, 2002, Winston County moved the trial court to dismiss, or, in the alternative, for a summary judgment as to the state-law claims against it. On June 12, 2002, Harper amended her complaint as to her breach-of-contract claim. On June 27, 2002, Winston County readopted its motion to dismiss or for a summary judgment. Wright filed her "Motion to Dismiss/Answer" on July 3, 2002, and on August 1, 2002, she filed a "Motion to Dismiss/Alternative Motion for Summary Judgment." After a hearing, the trial court[2] entered a summary judgment in favor of Winston County and Wright. Harper appeals the trial court's judgment as to her state-law breach-of-contract and assault-and-battery claims.
 Standard of Review
When reviewing a trial court's summary judgment, this Court must determine whether there were any genuine issues of material fact and whether the movant was entitled to a judgment as a matter of law. See Ex parte Atmore Cmty. Hosp., 719 So.2d 1190,1193 (Ala. 1998). The movant has the initial burden of making a prima facie showing that there is no genuine issue of material fact; if the movant makes that showing, the burden then shifts to the nonmovant to present substantial evidence of each element of the claim challenged by the movant. Id. Substantial evidence is "`evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Lolley v. CharterWoods Hosp., Inc., 572 So.2d 1223, 1224 (Ala. 1990) (quotingWest v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989)).
 Harper's Breach-of-Contract Claim Against Winston County
Harper argues that the employee handbook for employees of Winston County constitutes a valid and enforceable employment contract and that in terminating her employment Winston County breached that contract. She argues that Winston County (1) terminated her for a reason other than those enumerated in the employee handbook as justifying dismissal and (2) terminated her without allowing her an opportunity to respond to the *Page 350 
charges against her, in violation of the provisions of the handbook.
Harper argues that the County terminated her employment for refusing to participate in a private meeting with Wright and for supporting a candidate for county commission whom Wright did not support — reasons she states are not enumerated in the handbook as reasons justifying an employee's dismissal for "the good of the County service." The pertinent section of the employee handbook reads:
 "7. DISMISSALS — Any employee may be dismissed for the good of the County service. Reason(s) for dismissal may include, but shall not be limited to:
 "(a) Incompetency or inefficiency in the performance of duties;
 "(b) Conviction of a criminal offense or of a misdemeanor involving moral turpitude;
 "(c) Violation of any lawful and reasonable regulation, order or direction made or given by a supervisor, or insubordination that constitutes a serious breach of discipline;
 "(d) Intoxication or drinking of intoxicating beverages while on duty, or being under the influence of an illegal drug or narcotic while on duty;
 "(e) Theft, destruction, carelessness, or negligence in the use of the property of the County;
 "(f) Abusive personal conduct or language toward the public or toward fellow employees, or abusive public criticism of a superior or other County Official(s).
 "(g) Unauthorized absences or abuse of leave privileges;
 "(h) Incapacity for proper performance of duties because of a permanent or chronic physical or mental defect;
 "(i) Acceptance of any valuable consideration which was given to influence the employee in the performance of his duties;
 "(j) Falsification of records or use of official position for personal advantage;
 "(k) Loss of driver's license and driving privileges by due process of law when the employee's position makes the operation of a motor vehicle necessary in the performance of his duties;
 "(l) Violation of any duly adopted Winston County personnel policy or State or Federal law or regulation governing public employment.
 "Dismissals require department head action and concurrence of the Appointing Authority:
 "a. The employee may be furnished a written notice of the proposed dismissal, the reason(s) for it, and his right to answer the charges orally or in writing.
 "b. If the employee fails to respond to the notice, the proposed dismissal shall be effective on the date specified."
(Emphasis added.) The County argues that Wright and the employees of the Department of Revenue are unclassified employees — "[s]alaried employees who serve at the pleasure of elected officials" — and are therefore not covered by the employee handbook. The County further argues that it terminated Harper's employment for, among other things, insubordination, and that Harper violated several subsections in the handbook, including subsections (a), (c), (g), and (l), relating to incompetency and inefficiency; violation of directions given by a supervisor or insubordination; unauthorized absences; and violation of the personnel policy. The County further notes that the handbook provides that those are not the only reasons for which an employee may be dismissed. The County argues that Harper, however, admits to violating some of the provisions of the handbook. Finally, the *Page 351 
County argues that Harper "attempts to impute to Wright nefarious motives" for terminating her; however, the County states that even if Wright did have such motives for terminating Harper, Harper still cannot prove that the County breached the provisions of the handbook.
It is well-settled law in Alabama that employment is at will and is terminable by either party with or without cause.Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725, 728 (Ala. 1987). This Court has recognized that an employee handbook can represent a binding contract obligating an employer to satisfy certain conditions precedent to dismissing an employee. Id.
Accordingly, we have held:
 "[T]he language contained in a handbook can be sufficient to constitute an offer to create a binding unilateral contract. The existence of such a contract is determined by applying the following analysis to the facts of each case: First, the language contained in the handbook must be examined to see if it is specific enough to constitute an offer. Second, the offer must have been communicated to the employee by issuance of the handbook, or otherwise. Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer. His actual performance supplies the necessary consideration."
512 So.2d at 735. "`An employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer.'" 512 So.2d at 731, quoting PineRiver State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983). If the employer reserves in the employee handbook the right to change policies unilaterally, its reservation operates as a disclaimer to negate any inference that the handbook constitutes an enforceable contract. Stinson v. American Sterilizer Co.,570 So.2d 618, 621 (Ala. 1990).[3]
The employee handbook for Winston County does not represent a binding employment contract. The introduction to the handbook states:
 "The Winston County Commission presents this handbook as a guide for working rules, conditions and wage scales relative to employment with Winston County.
 "It is the intent of this handbook to help guide and instruct the employees of Winston County to have a better understanding and knowledge of their employment.
 ". . . The working rules and conditions set [out] herein are a guide and may vary slightly with the occasion as all problems vary."
This language is sufficient to negate the inference that the handbook constituted an offer on the part of the County to create a binding employment contract. The introduction in the handbook repeatedly states that the handbook is meant to serve as a "guide" for the employees of Winston County, and it states that the conditions of the handbook may "vary . . . with the occasion." As in Stinson, the handbook here contains express disclaimers reserving to *Page 352 
the County the right to deviate from the policies stated in the handbook. Stinson, 570 So.2d at 621-22. Moreover, the language of the handbook is not so specific that Harper could reasonably conclude that the County would always adhere to the policy set out in the handbook. Id. See also Hoffman-LaRoche,512 So.2d at 736-37. Thus, as a matter of law, the employee handbook for Winston County did not constitute an enforceable contract of employment.
Even if we were to assume that the handbook did represent an enforceable employment contract, however, we would have to conclude that the County did not breach that contract. In her own version of the facts, Harper admits that she refused to follow her supervisor to her office for a meeting; Harper thereby refused to obey a direct order.[4] Wright describes her conversations with Harper leading up to Harper's termination as "heated." Wright states that before the incident with Harper on May 9, Harper had become "angry with her husband over the phone and made a scene in front of the other employees at their work station where customers would come in to do business at the Revenue Commissioner's Office." Wright stated that she had made it clear to Harper "that she was not to display upset or argue in the presence of employees and other customers."
Wright testified that during the argument on May 9, she ordered Harper to her office to prevent having a heated discussion in front of the other employees in the Department and any customers who might have been in the area. It was not unreasonable for Wright to request that Harper step into her office. Harper's refusal to follow Wright's order constitutes insubordination — a stated reason for dismissal in the employee handbook. Therefore, the County did not act in a manner inconsistent with the handbook; therefore, even if we had concluded that the employee handbook represented a binding employment contract, the County did not breach the contract.
Harper also argues that Winston County breached the procedural provisions of the handbook because, she claims, the handbook entitled her to notice of her dismissal and to an opportunity to respond to the charges against her before she was dismissed. She argues that the "post-termination" hearing held on June 13, 2000, was insufficient because, she claims, the handbook "promises notice and an opportunity to be heard `pre-termination,' not `post-termination.'" However, Harper does not cite to relevant provisions of the handbook that would support her argument. It appears that the handbook does not require the County to provide the employee whose employment is being terminated with a pretermination notice of dismissal and an opportunity to be heard, nor does it state that the County is required to hold a pretermination hearing; it provides that "[t]he employee may be furnished a written notice of the proposed dismissal, the reason(s) for it, and his right to answer the charges orally or in writing." (Emphasis added.) Moreover, the record indicates that Wright attempted to meet with Harper on May 9 and May 10 regarding her employment. However, Harper refused to attend those meetings because of Wright's alleged previous statements about Harper's political association with Hayes. After Harper was discharged on May 10, the County continued to pay her until her hearing. At her hearing, Harper was represented *Page 353 
by counsel, was allowed to present the testimony of witnesses, and was allowed to tell her version of the events leading up to her termination. The County allowed Harper, before removing her from its employment and ultimately from the County's payroll, to respond to Wright's reasons for terminating her employment. Therefore, the summary judgment for the County on the breach-of-contract claim was proper.
 Harper's Assault-and-Battery Claim Against Wright
Harper also argues that the trial court erred in entering a summary judgment in favor of Wright on Harper's assault-and-battery claim, because, she claims, she presented substantial evidence in support of her claim. Harper argues that Wright admits that she intentionally grabbed Harper's arm and, she asserts, Wright's grabbing of her arm was offensive. Harper states: "[Wright] jerked my arm and tried to pull me back." She argues that Alabama law does not require that Wright strike or hit her in order for a battery to occur. See Ex parte AtmoreCmty. Hosp., 719 So.2d at 1193, and Surrency v. Harbison,489 So.2d 1097 (Ala. 1986). In response, Wright argues that she merely "took a hold of [Harper's] hand." Wright states that she did not touch Harper in an offensive manner and that she was only trying to coax Harper into stepping into her office so that they could continue their conversation away from the view of the customers and the employees of the Department. The trial court stated in its summary-judgment order that "the undisputed evidence from Sandra Wright clearly points out that the touching was not in any way harmful or offensive, but was instead done in an attempt to bring [Harper] under control."
The plaintiff in an action alleging assault and battery must prove "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." AtmoreCmty. Hosp., 719 So.2d at 1193. In Atmore Community Hospital, the plaintiff presented evidence indicating that the defendant "touched her waist, rubbed against her when passing her in the hall, poked her in the armpits near the breast area, and touched her leg." 719 So.2d at 1194. The plaintiff also presented evidence indicating that "each of these touchings was intentional, was conducted with sexual overtones, and was unwelcome." Id. We held that these factual assertions constituted substantial evidence that the defendant had committed a battery. Id.
In Surrency, we stated that an actual injury to the body is not a necessary element for an assault-and-battery claim.489 So.2d at 1104. We also stated that when the evidence as to whether a battery in fact occurred is conflicting, the question whether a battery did occur is for the jury. Id. QuotingSinger Sewing Machine Co. v. Methvin, 184 Ala. 554, 561,63 So. 997, 1000 (1913), this Court stated:
 "`As to what acts will constitute a battery in a case like this, the rule is well stated by Mr. Cooley in his work on Torts. He says: "A successful assault becomes a battery. A battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another. The wrong here consists, not in the touching, so much as in the manner or spirit in which it is done, and the question of bodily pain is important only as affecting damages. Thus, to lay hands on *Page 354 another in a hostile manner is a battery, although no damage follows; but to touch another, merely to attract his attention, is no battery and not unlawful. And to push gently against one, in the endeavor to make way through a crowd, is no battery; but to do so rudely and insolently is and may justify damages proportioned to the rudeness. . . ."'"
Surrency, 489 So.2d at 1104.
Alabama courts have recognized that privilege can be a defense to a plaintiff's claim that the defendant battered her. Michael L. Roberts and Gregory S. Cusimano, Alabama Tort Law § 28.2 and § 28.4 (2d ed. 1996). This Court has held that when a merchant suspects a customer of shoplifting, it is reasonable for the merchant's employee to use reasonable force to ensure that the suspected shoplifter is detained. See, e.g., Kmart Corp. v.Perdue, 708 So.2d 106, 110 (1997).
In this case, there is no question that Wright intended to touch Harper's arm; it is the "manner or spirit" in which Wright touched Harper's arm that is in dispute. Harper testified at the June 13, 2000, hearing that Wright forcefully grabbed her arm. Wright testified that she reached for Harper's arm in an attempt to lead her into her office so they could continue their discussion away from the public area. In Surrency, we noted that "to touch another, merely to attract his attention, is no battery and not unlawful." 489 So.2d at 1104. While it is certainly conceivable that this type of touching is all that occurred in this case, Harper presents substantial evidence to the contrary. Harper testified at her due-process hearing that Wright "jerked" her arm. In her response to Wright's motion for a summary judgment, Harper states that Wright's touch greatly offended her and that this fact is evidenced by the fact that she filed her complaint with the Winston County Commission on May 9, 2000. In her complaint, Harper states that "[Wright] grabbed my arm and tried to force me to go with her." Reviewing the facts in the light most favorable to Harper, as this Court is required to do on an appeal from a summary judgment, Ex parte General MotorsCorp., 769 So.2d 903, 905 (Ala. 1999), we conclude that the question whether a battery occurred in this case — specifically, whether Wright touched Harper in a harmful or offensive manner — is a question of fact for the jury to decide.
 Conclusion
We affirm the trial court's summary judgment in favor of Winston County on Harper's breach-of-contract claim; we reverse the summary judgment in favor of Wright on Harper's assault-and-battery claim; and we remand this case to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, BROWN, HARWOOD, and STUART, JJ., concur.
[1] Wright states that the day before, on May 8, 2000, Harper arrived at work before 8:00 a.m., but that she went to the back office to make a personal telephone call and that she did not begin her work duties until 8:30 a.m. Wright states that Harper was late to work three times after she was warned that she needed to be on time.
[2] The circuit judges of the 25th Judicial Circuit recused themselves in this case; Judge Glenn E. Thompson of the 8th Judicial Circuit was appointed to preside.
[3]
 "In this case, the Company's employee handbook contains express disclaimers reserving the Company's right to deviate from all of the policies stated in the handbook. Stinson [the former employee] does not contest or dispute the existence of these disclaimers. Accordingly, Stinson cannot reasonably conclude that the Company was committed to always adhere to the policy stated in the handbook; therefore, the handbook, as a matter of law, could not reasonably be construed as a unilateral contract of employment, modifying Stinson's employment-at-will status; the handbook, as a matter of law, could not be construed as constituting an enforceable contract of employment."
Stinson, 570 So.2d at 621-22.
[4] "Reason(s) for dismissal may include . . . [v]iolation of any lawful and reasonable regulation, order or direction. . . ."