Howard Forrester, as the executor of the estate of Louise Forrester, appeals from the Court of Civil Appeals' reversal of the judgment of the Jefferson Probate Court.[1] We affirm.
 I. Facts and Procedural History
The Court of Civil Appeals stated the relevant facts in Hollisv. Forrester, 914 So.2d 852, 852-54 (Ala.Civ.App. 2004):
 "The record reveals that George Edward Lourie (`George') and Emily Barnes Lourie (`Emily'), a married couple, executed wills on January 21, 1983. George predeceased Emily, and his will was admitted to probate in Jefferson County in 1997. In addition to stating several specific bequests, George's will provided that if Emily survived him, the residue of his estate was to be divided into two parts, which were designated as the `Marital Share' and the `Family Share.' George intended that all or part of the `Marital Share' would constitute estate-tax-advantaged `qualified terminable interest property' (`QTIP') under § 2056(b)(7) of the United States Internal Revenue Code should his executors make an election to that effect. George's executors made such an election, and, pursuant to the terms of George's will, the moneys allocated to the `Marital Share' were paid into two separate trusts, a non-QTIP `Exempt Marital Trust' and a QTIP `Non-Exempt Marital Trust.' The effect of the executors' election was to allocate the assets in the `Non-Exempt Marital Trust' to Emily's estate for estate-tax purposes rather than subjecting them to estate taxation upon George's death; however, George's will also provided that upon Emily's death, the corpus of the `Non-Exempt Marital Trust,' as well as the corpus of the `Exempt Marital Trust' and the `Family Trust,' would pass to the three daughters of his sister Dorothy L. Phelps: Susan Louise Phelps Hollis, Ann Lourie Phelps Nichols, and Margaret Jo Phelps Snow (`the nieces').
 "Emily died in March 2001, and her will was admitted to probate in Jefferson County soon thereafter; AmSouth Bank, N.A. (`AmSouth'), as successor to the First National Bank of Birmingham, was named executor of Emily's will. In addition to various bequests of personal property and testamentary gifts of life-insurance proceeds, Emily's will provided, in pertinent part, that the residue of her estate would pass to George or, if he should die before her, to George's sister Dorothy L. Phelps (who also died before Emily). Emily's will did not contain any provision concerning the payment of estate taxes.
 "In June 2002, AmSouth filed a `Petition for Instructions' in the Jefferson Probate Court. . . . AmSouth later amended its petition for instructions so as to request that the probate court determine whether the Alabama estate tax attributable to the inclusion of the `Non-Exempt Marital Trust' in Emily's *Page 858 
estate should be paid out of the corpus of that trust or from Emily's estate.[2]
 ". . . The parties filed stipulations of facts that, among other things, addressed the estate-tax-liability issue, and they filed briefs concerning their respective positions as to that issue. The probate court, on December 29, 2003 . . . declared that the Alabama estate taxes attributable to the inclusion of the `Non-Exempt Marital Trust' in Emily's estate should be borne by that trust and not by the estate, and `ratified and approved' AmSouth's payment of those taxes from that trust."
(Emphasis added.)
The Court of Civil Appeals reversed the judgment of the probate court and held that the Alabama estate taxes should have been paid from the residue of Emily's estate, rather than from the corpus of the QTIP trust. As a result of the Court of Civil Appeals' ruling, because the corpus of the trust was left to George's three nieces — Susan Louise Phelps Hollis, Ann Lourie Phelps Nichols, and Margaret Jo Phelps Snow ("the nieces") — their bequest was not reduced by the Alabama estate taxes due on Emily's death. We granted Forrester's petition for certiorari review to determine whether the Court of Civil Appeals was correct in its ruling.
 II. Standard of Review
"[B]ecause the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court's ruling." Beavers v. County of Walker, 645 So.2d 1365,1373 (Ala. 1994) (citing First Nat'l Bank of Mobile v.Duckworth, 502 So.2d 709 (Ala. 1987)). Appellate review of a ruling on a question of law is de novo. See Rogers Found.Repair, Inc. v. Powell, 748 So.2d 869 (Ala. 1999); Ex parteGraham, 702 So.2d 1215 (Ala. 1997).
 III. Analysis
Generally speaking, the value of property passing from a decedent to his or her surviving spouse is deducted from the decedent's gross estate for the purpose of calculating federal estate-tax liability. See I.R.C. § 2056 (allowing a "marital deduction" for the value of property passing to a surviving spouse). In certain situations, the Internal Revenue Code allows the marital deduction for the value of property transferred to a surviving spouse even though the spouse receives less than full ownership rights in the property transferred. One such transfer is described as a "Qualified Terminable Interest Property" ("QTIP") trust. The United States Court of Appeals for the Ninth Circuit, in Davis v. Commissioner, 394 F.3d 1294, 1297-98 (9th Cir. 2005), briefly described the requirements of the QTIP trust and its relationship to the marital deduction:
 "Under the Internal Revenue Code, the taxable estate of a decedent is computed by taking the gross estate defined in section 2031 and subtracting the deductions listed in sections 2053, 2054, 2055 and 2056. I.R.C. § 2051. Section 2056 describes the marital deduction. Although property passing from a decedent to a surviving spouse generally qualifies for a marital deduction from the federal estate tax, I.R.C. § 2056(a), life estates and other terminable interests passing to a surviving spouse are not deductible unless they qualify for an exception under section 2056(b)(5) or section 2056(b)(7). I.R.C. § 2056(b)(1).
 "To qualify for a marital deduction under section 2056(b)(7), a marital trust must consist of property `(I) which *Page 859 
passes from the decedent, (II) in which the surviving spouse has a qualifying income interest for life, and (III) to which an election under [section 2056(b)(7)] applies.' I.R.C. § 2056(b)(7)(B)(i). A deduction under section 2056(b)(7) is also known as a Qualified Terminable Interest Property, or QTIP, deduction. A surviving spouse has a `qualifying income interest for life' if he or she is `entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property,' and `no person has a power to appoint any part of the property to any person other than the surviving spouse.' I.R.C. § 2056(b)(7)(B)(ii)."
(Footnotes omitted.)
While the decedent is afforded the marital deduction for the value of property transferred in a QTIP trust, the value of that property is included in the estate of the surviving spouse when he or she dies. See I.R.C. § 2044. However, I.R.C. § 2207A allows the executor of the estate of the surviving spouse to collect from the person receiving the property formerly held in the trust the amount of federal estate tax resulting from the presence of a QTIP trust:
"(a) Recovery with respect to estate tax. —
 "(1) In general. — If any part of the gross estate consists of property the value of which is includible in the gross estate by reason of section 2044 (relating to certain property for which marital deduction was previously allowed [in this case, the QTIP trust]), the decedent's estate shall be entitled to recover from the person receiving the property the amount by which —
 "(A) the total tax under this chapter which has been paid, exceeds
 "(B) the total tax under this chapter which would have been payable if the value of such property had not been included in the gross estate.
 "(2) Decedent may otherwise direct. — Paragraph (1) shall not apply with respect to any property to the extent that the decedent in his will (or a revocable trust) specifically indicates an intent to waive any right of recovery under this subchapter with respect to such property."
(Emphasis added.)
Standing in marked contrast to I.R.C. § 2207A is § 40-15-18, Ala. Code 1975, the provision of the Alabama Revenue Code addressing the allocation of the burden of state and federal estate taxes. Section 40-15-18 states:
 "Unless the decedent directs otherwise in his will, all estate taxes, whether state or federal, payable by reason of the death of the decedent, shall be paid by the executor or other personal representative out of the estate property and shall be a charge against the residue thereof, and the executor or other personal representative shall be under no duty to recover from anyone for the benefit of the estate the pro rata portion of the estate tax attributable to inclusion in the gross estate of any property, including proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor or other personal representative, which does not pass to the executor or other personal representative as a part of the estate."
(Emphasis added.)
While § 40-15-18 purports to address the burden of both state and federal estate taxes, I.R.C. § 2207A preempts § 40-15-18 with respect to allocating the burden of federal estate taxes and allows *Page 860 
the executor of Emily's estate to collect, from those who receive the corpus of the QTIP trust after her death, the amount of federal tax liability attributable to the trust. See Clevelandv. Compass Bank, 652 So.2d 1134, 1137-38 (Ala. 1994). Cf.McAleer v. Jernigan, 804 F.2d 1231, 1233 (11th Cir. 1986) ("[I]n the absence of congressional enactments to the contrary, state law governs the allocation of the burden of taxes as to property that is part of the estate, and where Congress has spoken, as with life insurance proceeds not part of the estate, federal law governs.").
In addressing the allocation of the Alabama estate-tax burden arising from the inclusion of a QTIP trust in an estate, this Court, in Cleveland, 652 So.2d at 1137-38, noted:
 "Alabama has no special statute apportioning state estate tax liability attributable to the inclusion of the value of Q-TIP property in the estate of the decedent. Alabama, however, does have a general statute apportioning `all estate taxes, whether state or federal,' to the residue of the decedent's estate. Ala. Code 1975, § 40-15-18.
". . . .
 "We hold that I.R.C. § 2207A does not preempt § 40-15-18 and that under the nonapportionment rule of § 40-15-18 the Alabama estate tax attributable to the Q-TIP property included in the estate of [the decedent] is a charge against the residue of her estate. Section 2207A clearly preempts § 40-15-18
with regard to the payment of federal estate taxes attributable to Q-TIP property; however, § 2207A makes no specific provision for the apportionment of state estate taxes. [The appellant] argues that § 2207A applies to the `total tax' payable by reason of the death of the decedent; however, [the appellee] correctly points out that the phrase `total tax' in § 2207A is part of the complete phrase, `total tax under this chapter,' meaning federal estate tax. [The appellant] argues that, because Alabama's estate tax is defined in terms of the maximum allowable deduction from estate tax for state estate taxes actually paid (i.e, a `sponge tax' or `pick-up tax'), the state tax is in reality a part of the total tax. See I.R.C. § 2011; Ala. Code 1975, § 40-15-2. We are not persuaded by this argument. The Alabama estate tax is imposed by § 40-15-2 of the Alabama Code, not `under [the] chapter' of the Internal Revenue Code pertaining to federal estate tax."
(Emphasis added.) Therefore, under Cleveland, the Alabama estate taxes payable by the executor of Emily's estate should have been paid from the residue of that estate.
Forrester argues that Cleveland is distinguishable from the instant case because, he argues, it is clear that Emily's husband, George, intended that all estate taxes payable by reason of the QTIP trust be paid from the corpus of that trust. He contends that none of the wills or trust instruments involved in Cleveland, including the will of the surviving spouse, spoke to the allocation of the estate-tax burden. But even assuming that George had such an intent,[3] the Court of Civil Appeals correctly *Page 861 
concluded that "the pertinent testator in this case is Emily, not George." Forrester, 914 So.2d at 855. Emily's will does not specify the source from which estate taxes are to be paid, and in the absence of such specification, the default provision of §40-15-18 controls.
Forrester argues in the alternative that Emily did indeed provide in her will that all estate taxes were to be paid from the corpus of the QTIP trust. He contends that, by failing to expressly disavow the federal default provision contained in I.R.C. 2207A, Emily obviously did not want estate taxes to be paid from the residue of her estate. While Forrester cites evidence indicating that the drafter of Emily's will was aware of the federal default provision, we cannot conclude that he or she was unaware of § 40-15-18, Ala. Code 1975, or was even concerned with Alabama estate taxes that would arise after Emily's death. Section 40-15-18 requires an affirmative directive if the decedent wishes to avoid the default rule applicable to state
taxes, and it is not this Court's place to change that requirement.
Forrester also argues that Cleveland was wrongly decided and should be overruled. He contends that, contrary to the holding inCleveland, federal law, including § 2207A, applies to the allocation of the Alabama estate-tax burden. The Legislature has indeed embraced aspects of federal law in the context of state estate taxes. Section 40-15-2, Ala. Code 1975, in providing the method of calculating the amount payable of Alabama estate tax, refers to federal law:
 "Subject to the exception hereinafter stated, there is hereby levied and imposed upon all net estates passing by will, devise or under the intestate laws of the State of Alabama, or otherwise, which are lawfully subject to the imposition of an estate tax by the State of Alabama, a tax equal to the full amount of state tax permissible when levied by and paid to the State of Alabama as a credit or deduction in computing any federal estate tax payable by such estate according to the act of Congress in effect, on the date of the death of the decedent, taxing such estate with respect to the items subject to taxation in Alabama. The tax hereby imposed shall not exceed in the aggregate amounts which may by any law of the United States be allowed to be credited against or deducted from such federal estate tax. The estate tax hereby levied shall be levied only so long as and during the time an inheritance or estate tax is enforced by the United States against Alabama inheritances or estates and shall only be exercised or enforced to the extent of absorbing the amount of any deduction or credit which may be permitted by the laws of the United States now existing or hereafter enacted to be claimed by reason thereof as a deduction or credit against such similar tax of the United States applicable to Alabama inheritances or estates. The rates of taxation, the definition of `net estate' and the methods of arriving thereat shall be as provided in such act of Congress."
While the amount of the Alabama estate tax to be paid is based upon the maximum credit allowed by provisions of the Internal *Page 862 
Revenue Code relating to federal estate tax, nothing in the provisions of Alabama's estate-tax scheme indicates that, by adopting the foregoing scheme for computation, the Legislature also intended to adopt the scheme set out in I.R.C. § 2207A for allocation of estate-tax liability. As previously noted, §40-15-18, Ala. Code 1975, expresses precisely the opposite legislative intent than does I.R.C. § 2207A.
 IV. Conclusion
The instant case cannot be distinguished from Cleveland.
Further, we are not persuaded that Cleveland should now be overruled. The ruling of the Court of Civil Appeals is affirmed.
AFFIRMED.
NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] The heirs at law of Emily Barnes Lourie, the decedent whose will is the subject of this appeal, also participated in the litigation in the probate court, and were appellees in the Court of Civil Appeals. They did not, however, file a petition for certiorari with this Court.
[2] The probate court also addressed issues regarding the disposition of Emily's residual estate. Those issues were waived in the Court of Civil Appeals. Forrester, 914 So.2d at 854.
[3] "Item Four" of George's will states:
 "All estate and inheritance taxes which may be assessed or imposed with respect to my estate, or any part thereof, wherever situated, whether or not passing under my Will, including the taxable value of all policies of insurance on my life of which I am owner, and of all transfers, powers, rights or interests in my estate for the purposes of estate taxes, shall, if my said wife survives me, be paid out of the Marital Share of my residuary estate, or, if my said wife does not survive me, be paid out of my residuary estate, and in either event such payment shall be made without apportionment."
(Emphasis added.) The nieces contend that, to the extent George's will is applicable, the Alabama estate-tax liability at issue here results from assets in Emily's estate, not George's estate, and that therefore the reference in George's will as to payment of inheritance taxes imposed with respect to his estate does not speak to the question of taxes due as a result of assets in her estate.