MOORE, Chief Justice.
The State of Alabama, on behalf of Rick Allison, Probate Judge of Walker County, appeals from a judgment of the Walker Circuit Court in favor of Jill Farris, the county administrator for Walker County. By statute, Judge Allison, as the chief elections officer for Walker County, see § 17 — 1—3(b), Ala. Code 1975, must publish certain voter lists and election notices (the lists and the notices are hereinafter referred to as collectively “the notices”). § 17-4-1, § 17-8-2, § 17-9-5, and § 21-4-23(b), Ala.Code 1975. Judge Allison argues on appeal, as he did in the circuit court, that he may determine in which newspaper of general circulation the notices will be published and that he may also contract with that newspaper for the cost of publishing the notices.

Facts and Procedural History

On February 28, 2014, Judge Allison requested bid proposals from the two newspapers of general circulation in Walker County — The Daily Mountain Eagle and The Corridor Messenger. In the past the notices were simply published in both newspapers. Judge Allison initiated the bidding process to avoid the expense of publishing the notices in both newspapers. Before The Corridor Messenger began publication in 2007, the notices were published only in The Daily Mountain Eagle, which was at that time the sole newspaper of general circulation in Walker'County.
Pursuant to Judge Allison’s request for bids, The Daily Mountain Eagle and The Corridor Messenger on March 21, 2014, submitted their proposals. The amount of The Corridor Messenger’s proposal was approximately $17,500. less than the amount of The Daily Mountain Eagle ’s proposal. On March 28, 2014, Judge Allison signed a contract with Corridor Messenger, Inc., authorizing publication of the notices in The Corridor Messenger and reviewed and approved a draft publication of the notices.
Although § 17-4-1 authorizes-Judge Allison and the Walker County Commission (“the Commission”) to publish the voter lists, the Commission is not authorized to publish the election notices referenced in §§ 17-8-2, 17-9-5, and 21-4-23, and, for that reason, Farris focuses her argument solely on § 17-4-1.
On April 8, 2014, the Commission invited separate' bids for publishing the election lists it was authorized to publish. On April 10, 2014, an attorney for the Commission notified The Corridor Messenger that “the Walker County Commission will not pay for any advertising requested by the Walker County Probate Judge regarding; voter information until further notice.” A copy of this letter was sent to Judge Allison’s attorney.
In response, Judge Allison, in his official capacity, filed in the Walker Circuit Court a petition for a writ of mandamus or, in the alternative, a complaint for declaratory and injunctive relief requiring Farris, in her official capacity as administrator for Walker County, to make payment on. behalf of the Commission to Corridor Messenger, Inc., for that , company’s publication of the notices in The Corridor Messenger pursuant to its contract with Judge Allison. Judge Allison also asked the circuit court to order the Commission to pay reasonable costs and-attorney fees incurred by him in pursuit of these remedies. Judge Allison-requested a hearing for no later than April 30, 2014, the date by which The Corridor Messenger was required by the contract to publish the notices. The circuit court set a hearing for April 30, 2014. Farris did not answer Judge Allison’s pleading. On May 2, 2014, following the hearing, the circuit court denied . Judge Allison’s ■ request for relief, stating, in part:
*216 . “The crux of the issue may be framed thusly: Does the Probate Judge, as the Chief Election Officer of the County, have the authority to determine in which newspaper of general circulation the required voter information is to be published and unilaterally decide what . amount to pay for this service?
“The Court thinks not. The obligation to publish does not carry with it the authority to contract. The Probate Judge is required to gather the appropriate information required by statute to be published and get it to- a publisher which operates a newspaper of general circulation selected by the Walker County Commission (the ‘Commission’) at a price determined by the Commission. There is no appropriation in the Probate Judge’s budget for the purchase of these services. There is, however, a line item in the Commission’s budget tor these services. It is the Commission’s obligation to fund the payment for these services"and it does so by that specific line item in its budget. The obligation to fund in this Court’s view must carry with it the right to select the publisher and the right to determine the price to be paid. In this Court’s opinion this authority must reside with the Commission which is charged with expending "these funds, not the Office of the Probate Judge. ■ Because of this the Court finds that the • Office of Probate Judge lacks the authority to contract with [Corridbr Messenger, Inc.,] for" the services required ■to fulfill the mandate under the statute for publishing the required voter information.”
On June 3, 2014, Judge Allison timely filed a motion for a new trial or, in the alternative, to alter, amend, or vacate the judgment. On July 31, 2014, the circuit court heard oral argument on the motion and received testimony and documentary evidence from Judge Allison and Farris. The motion was denied by operation of law on September 2, 2014. Judge Allison filed a timely notice of appeal on October 8, 2014, seeking not only payment for the costs of publishing the notices but also attorney fees for his efforts to compel the Commission to pay those costs. On -appeal Judge Allison presents one issue for review: Whether Judge Allison, who is statutorily charged with publishing the notices, can decide which newspaper will publish the notices, enter into a contract for publication- of the notices, and bind the Commission to pay the costs of publication.

Standard of Review

“ ‘ “Because the underlying facts are not disputed and this appeal focuses oh the application of the law to those facts, there can be no presumption of correctness accorded to the trial court’s ruling.” Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala.1994) (citing First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987)). Appellate review of a ruling on a question of law is de novo. See Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999); Ex parte Graham, 702 So.2d 1215 (Ala.1997).’ ”
Wood v. Booth, 990 So.2d 314, 317-18 (Ala.2008) (quoting Ex parte Forrester, 914 So.2d 855, 858 (Ala.2005)).

Discussion

The parties do not dispute that the Commission ordinarily must pay for the publication of the notices. Farris conceded this point in the circuit court, stating: “We are obligated to pay for the cost of publishing. No question about it,”[1] *217 The parties do not challenge the circuit court’s' holding that “[i]t is" the Commission’s obligation to fund the payment "for these services and -it does so by that specific line item in its budget.” Therefore, the dispute involves only what authority, if any, a probate judge, who is obligated by statute- to publish the notices, has to bind a county commission to pay for publishing the notices in a newspaper of general circulation within the county.
Section 17-4-1, Ala.Code 1975, states, in relevant part:
“The judge of probate shall publish from, the state voter registration list a correct alphabetical list of qualified electors either by county, precinct, district, or subdivision wherein each elector is registered to vote, in .some newspaper with general circulation in the county,, on or before the twentieth day preceding the regularly scheduled primary election— The lists. required to be published pursuant to this section may be published, at the discretion of the county commission, as a preprinted or inserted advertising"supplement at á cost no ’'greater than the selected newspaper’s lowest applicable national insertion rates.... ” •
This statute does not specify whether a probate judge has the authority to determine which newspaper of general circulation will publish the required voter lists and at what cost. Nor does it say that a probate judge must obtain the county corn-mission’s approval for the costs of publishing the lists. This inconvenient silence has caused the confusion below, as evidenced by the following exchange between Judge Allison’s attorney, Mr, Algert S. Agrícola, and Farris’s attorney, Mr. Edward R. Jackson, during the April 30, 2014, hearing:
“THE COURT: ... All we’re talking ■ about right now ’is whether or not there’s an obligation of the county to pay for the publication, as I see it.
“MR. JACKSON: Judge, I respectfully disagree. We think it’s whether the obligation to pay and select is the county’s. The obligation to publish is clearly Judge Allison’s, but he hasn’t got the money in his budget.
“THE COURT: There’s no question about the money. But whose obligation is it to select?
.“MR. AGRICOLA: It’s the probate judge’s.
“THE COURT: Ánd you say why?
“MR. AGRICOLA: Because the statute . says the probate judge shall publish.
“MR. JACKSON: That’s right. And we agree with that, he shall publish.
“THE COURT: So—
“MR. JACKSON: But he can’t pick and pay for where' it goes, because under [§ ] 17-4-1 that Mr. Agricola has referred to, if he does that—
*218 “THE COURT: What does ‘shall publish’ mean?
“MR. JACKSON: Put it in the newspaper. Gather the information, get the list together—
“THE COURT: Put it in the newspaper of your choice?
“MR. JACKSON: Of the county commission’s choice.
“THE COURT: That’s fall’s argument.
“MR. JACKSON: Yes, sir.
“THE COURT: And the basis for that argument is what? Where is your legal basis for that?
“MR. JACKSON: That it’s our money, it’s not his money. He can’t—
“THE COURT: It’s the citizens of Walker County’s money.
“MR. JACKSON: County commission, yes, sir.
[[Image here]]
“MR. AGRICOLA: ... [The probate judge] does not answer to the county commission. The county commission is responsible under law passed by the legislature for the payment of costs. He doesn’t have to go and ask them to pay these costs, they’re required to.”
Judge Allison’s position, accordingly, is that by mandating that he publish the voter lists, § 17-4-1 — and by analogy §§ 17-8-2, 17-9-5, and 21-4-23(b) — implicitly requires the Commission to pay the costs of publishing the lists — a position Farris does not dispute. Indeed, Farris concedes that the Commission generally must pay for publishing the lists, and indeed the notices, but only if, she says, Judge Allison first submits the name of the newspaper and the costs of publication to the Commission for prior authorization. Farris contends that the Commission is entitled to choose in which newspaper, and at what cost, the notices should be published.
To support this proposition, Far-ris relies on the following language from § 17-4-1:
“The lists required to be published pursuant to this section may be published, at the discretion of the county commission, as a preprinted or inserted advertising supplement at a cQst no greater than the selected newspaper’s lowest applicable national insertion rates.”
Farris argues that this provision “clearly indicates a county commission has authority to participate in the publication process regarding selection and the format for publication.” We disagree that the Commission has the discretion to approve or disapprove publication decisions that only the probate judge is required, by statute, to make. Although § 17-4-1 authorizes a county cbmmission to publish the voter lists at its own discretion, that authority does not affect, and certainly does not undermine, the probate judge’s legal obligation to publish the notices.
“This Court has stated ... that the fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Clark v. Houston County Commission, 507 So.2d 902 (Ala.1987); Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala.1985); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In construing the statute, this Court should gather the intent of the legislature from the language of the statute itself, if possible. Clark v. Houston County Commission, supra; Advertiser Co. v. Hobbie, supra; Morgan County Board of Education v. Alabama Public School & College Authority, 362 So.2d 850 (Ala.1978). We may also look to the reason and necessity for the statute and the purpose sought to be obtained by enacting the statute. Ex Parte Holladay, 466 So.2d 956 (Ala.1985).”
*219 Pace v. Armstrong World Indus., Inc., 578 So.2d 281, 283 (Ala.1991). “A textually permissible interpretation that furthers rather than obstructs the document’s purpose should be favored.” Antonin Scalia and Bryan A. Gamer, Reading Law: The Interpretation of Legal Texts 63 (Thomson West 2012). See also Pruett v. Brittain, 285 Ala. 318, 321, 231 So.2d 885, 887 (1970) (“ ‘The primary purpose of statutory construction is to ascertain ... .the object and purpose sought to be obtained.’ ” (quoting Rinehart v. Reliance Ins. Co., 273 Ala. 535, 538, 142 So.2d 254, 256 (1962))). The interpretation of § 17-4-1 urged by Farris would defeat, not further, the purpose of the statute, which, like the other statutes directing publication of. the notices, is to require that probate judges “shall publish” certain election notices within a prescribed time.
Under Farris’s interpretation of § 17-4-1, Judge Allison would have been required to initiate the bidding process with The Daily Mountain Eagle and The Corridor Messenger and then to submit a prepub-lication request to the Commission, which would have to approve the request before any publication could occur or reject the request, in which event no publication would occur. Judge Allison’s statutory mandate to publish the notices within the statutorily prescribed time would thus have been contingent on the timeliness of the Commission’s response to his request.' If the Commission delayed its decision or failed to approve reasonable publication costs, then Judge Allison would be in violation of the law through no fault of his own, and the object of the statute would be defeated. Courts generally “reject a meaning that defeats a law’s object.” 2A Sutherland Statutory - Construction § 47:27 (7th ed.2014). Moreover, “[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory.” Scalia and Garner, Reading Law at 180. Farris’s interpretation of § 17-4-1 would create incompatibility between a county commission’s discretionary authority and a probate judge’s mandate to publish. Accordingly, we reject Farris’s interpretation of - § 17-4-1. A probate judge’s affirmative duty (“shall publish”) and authority may not be' superseded by a county commission’s discretionary option to publish the voter "lists as advertising supplements.
Because we cannot give effect to Far-ris’s interpretation of § 17-4-1 without defeating the object of that statute, and because neither Farris nor the circuit court cited any cases or statutes to support the circuit court’s holding that a probáte judge “lacks the ‘ authority to contract with [newspapers] for the services required to fulfill the [publication] mandate under the statute,” we reverse the circuit court’s holding that the Commission’s “obligation to fund ... must carry with it the right to select the publisher and the1 right to determine the price to be paid.” Judge Allison’s statutory obligation to publish cannot be divorced from the authority to contract for publication. In order to publish Judge Allison must .contract with a' newspaper. To deprive him of the ability to contract •with a newspaper for publication would deprive him of the ability to publish. Therefore, we hold that, under § 17-4-1, and by implication the other applicable statutes, probate judges may contract with newspapers to publish the notices that are required by that statute to be published in a local newspaper.
Finally, Farris argues that' Judge Allison’s authority to contract with a newspaper to publish the notices carries with it the corresponding duty to contract properly, that is, to comply with Alabama’s competitive-bid law. In support of her argument, Farris cites § 36-25-11, Ala.Code 1975, which states:
*220 ■ “Unless exempt pursuant to Alabama competitive laws or otherwise permitted by law, no public official or public employee ,. shall enter into any contract to provide goods or services which is to be paid in whole or in part out of state, county, or municipal funds unless the contract has been awarded through a process of ■ competitive bidding and a copy of the contract is filed- with the [State Ethics Commission.”
Farris assents that the notices were not exempt from the competitive-bid law, see § 41-16-51, Ala.Code 1975 (listing contracts exempt from the competitive-bid law), and that the contract between Judge Allison and Corridor Messenger, Inc., is subject to competitive bidding because it covered “labor, services, [or] work ... involving fifteen thousand dollars ($15,000) or more, made by or on behalf of’ the office of a probate judge. § 41-16-20, Ala. Code 1975. Judge Allison, for his part, argues that he substantially complied with the competitive-bid law, thus obligating the Commission to pay the costs of publishing the notices. See Kennedy v. City of Prichard, 484 So.2d 432, 434 (Ala.1986) (substantial compliance may satisfy the competitive-bid law); Brown’s Ferry Waste Disposal Ctr., Inc. v. Trent, 611 So.2d 226, 230 (Ala.1992) (same); Owens v. Bentley, 675 So.2d 476, 478 (Ala.Civ.App.1996)(same).
Having reviewed the record and briefs before us, we conclude that the circuit court did not rule on the issue or make findings of fact regarding whether the competitive-bid law applied and, if so, whether Judge Allison complied with the competitive-bid law.[2] Because the circuit court has not ruled on the issue whether the competitive-bid law applies or whether Judge Allison substantially complied with the competitive-bid law, we remand the case to the circuit court to consider those issues.

Conclusion

As chief election officer for Walker County pursuant to § 17-l-3(b), Ala.Code 1975, Judge Allison may contract to publish the notices he is required to publish under § 17-4-1, § 17-8-2, § 17-9-5, and § 21-4-23(b), Ala.Code 1975. We therefore reverse the circuit court’s judgment insofar as it held otherwise. We remand the case for further proceedings, including a determination of whether the competitive-bid law applies and, if so, whether Judge Allison substantially complied with the competitive-bid law and whether Judge Allison’s request for attorney fees is appropriate.
REVERSED AND REMANDED.
*221 ■BOLIN, MURDOCK, and MAIN, JJ., concur.
BRYAN, J.,.concurs in the result.

. See, e.g„ § 17-3-57, Ala.Code 1975 ("The several counties shall pay all other reasonable and necessary expenses incurred by the boards [of registrars] in carrying out the pro *217 visions of this chapter.'’); § 17-3-60, Ala. . Code- 1975 (providing that the county commission is responsible .for paying for clerical assistance for the judge of probate and the board of registrars regarding, in particular, the election- lists of the county); § 17-4-31, Ala.Code 1975 (providing that the state is to reimburse county commissions for costs pertaining to voter lists); § 17-6-42, Ala.Code 1975 (providing that ballots are to be paid for by cities and counties); § 17-6-47, Ala.Code 1975 (providing that the county is to pay for ballots and forms for probate judges); § 17— 7-1, Ala.Code 1975 (providing that the county is to pay for electronic-voting machines); 17-8-12, Ala.Code 1975 (providing that the county is to compensate election officials); § 17— 11 — 14, AlalCode 1975 (providing that the county is to compensate absentee-election managers); and § 17-13-4, Ala.Code 1975 (providing that the county is to compensate officers and.expenses of primary, general, or special elections).

, In fact, the circuit court avoided this issue altogether, as demonstrated by this brief exchange between Mr. Agricola and-the circuit court regarding substantial compliance with the competitive-bid law:
"MR. AGRICOLA: The only two things that Judge Allison did that are -not in technical compliance with the bid law is that he didn’t put a time of day on March 21st when he would open the bids. He didn’t do that, He didn’t open them in public. Those are the only two things,
"Now, there are cases that say substantial compliance with the bid law is all that’s required, so, you know and it’s up to the purchasing agent to. determine whether there’s substantial compliance. Now, we don’t go there because the probate judge is not listed in the competitive bid law as one of the officers required to contract by competitive bid, the county commission is. If the county commission wants to publish the second list of voters and incur die'unnecessary and additional cost of doing that, that’s up to the county. It can do that. It’s already been done now. It’s in today’s paper, why spend the extra money to do it? The probate judge was complying with his responsibilities. - ■
“THE COURT: I didn't know I was here to try the bid law today. I say we get past this point, then if there’s an issue, it will be resolved before the general election."