Rel: January 13, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

_____

### 1210016

_____

### Ed Davis

### v.

### City of Montevallo

**Appeal from Shelby Circuit Court**
**(CV-2017-000495)**

MITCHELL, Justice.

Employer-employee relationships sometimes sour and lead to claims that one side or the other has breached a contract.  Occasionally,

we have held that an employee handbook created the contract that was breached. We have reached that result only when -- as here -- the handbook's text required it. In this case, Ed Davis sued the City of Montevallo ("the City") in the Shelby Circuit Court, claiming that the City was in breach of contract because, in terminating his employment with the City, it failed to follow certain discharge procedures set out in an employee handbook it had issued to him. The City responded by arguing it was not required to follow the handbook's procedures because Davis was an at-will employee. After entertaining motions for summary judgment from both sides, the trial court ruled in favor of the City. Davis now appeals. We reverse the judgment and remand the case for further proceedings.

Facts and Procedural History

In May 1998, the Montevallo Recreation Board Number Two ("the Golf Board"), which administered the Montevallo Golf Course ("the Golf Course") on behalf of the City, hired Davis to manage the Golf Course.

In December 2007, Davis received a copy of the City's Employee Handbook ("the Handbook"). Shortly after receiving the Handbook,

Davis signed an acknowledgment of receipt and acceptance of its terms, which reads:

> "I acknowledge having been given a City of Montevallo Personnel Handbook and have been asked to carefully read it. I have been informed that I may ask my supervisor any questions that I do not understand. I understand that nothing in this Handbook can be interpreted to be a contract for employment for any specified period of time or to place a limitation on my freedom or the City's freedom to terminate the employment relationship at any time. I also understand that the City retains the freedom to change the Policies and Procedures with the approval of the Mayor and City Council."

The Handbook has been amended over the years, and it was last amended in 2014.

In July 2015, the City issued an ordinance dissolving the Golf Board and assuming direct and exclusive responsibility for the administration of the Golf Course and its employees. The ordinance gave Davis the opportunity to remain employed with the City on an "at-will" basis, under the direct supervision of the City's Mayor.

That August, Mayor Hollie Cost determined that Davis had violated several provisions of the Handbook. As a result, she terminated Davis's employment. The City later concluded that, under the Handbook, Davis would not receive payment for his accrued leave and personal time.

Davis sued the City, claiming that the City had breached its contract with him by failing to follow certain discharge procedures in the Handbook when it terminated his employment. The City answered Davis's complaint and later moved for summary judgment. Davis then filed his own motion for partial summary judgment. The trial court granted the City's motion and denied Davis's. Davis timely appealed.

Standard of Review

"We review the trial court's grant or denial of a summary-judgment motion de novo, and we use the same standard used by the trial court to determine whether the evidence presented to the trial court presents a genuine issue of material fact." Smith v. State Farm Mut. Auto. Ins. Co., 952 So. 2d 342, 346 (Ala. 2006). A motion for summary judgment should be granted only when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ala. R. Civ. P. 56(c)(3); see also Reichert v. City of Mobile, 776 So. 2d 761, 764 (Ala. 2000). To defeat a motion for summary judgment, the nonmovant must present substantial evidence that creates a genuine issue of material fact. See Borders v. City of Huntsville, 875 So. 2d 1168 (Ala. 2003). Substantial

evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989).

Analysis

This case presents two issues: (1) whether the City was bound to follow the procedures provided in the Handbook when it terminated Davis's employment and (2) if so, whether the City followed those procedures. Resolution of these issues turns on the language of the Handbook, which we examine below. That examination requires us to hold that the City was contractually bound to follow the Handbook's discharge procedures. But, because the trial court has not yet addressed the factual issue of whether the City followed those procedures, we remand the case for the court to make that determination.

A. The City's Motion for Summary Judgment

We begin by considering whether, as a matter of law, the Handbook created a unilateral contract between Davis and the City. Davis argues that, based on a reasonable reading of the Handbook, it did. We agree.

"[T]he rule is well settled in Alabama that an employee contract at will may be terminated by either party with or without cause or justification." Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 728 (Ala. 1987). That is, either party may terminate an at-will employment relationship for a good reason, a wrong reason, or for no reason at all. Id. But, regardless of an employer's reason for terminating the relationship, "[t]his Court has recognized that an employee handbook can represent a binding contract obligating an employer to satisfy certain conditions precedent to dismissing an employee." Harper v. Winston Cnty., 892 So. 2d 346, 351 (Ala. 2004).

To determine whether an employee handbook constitutes an offer to create a unilateral contract, we apply a three-part test. Hoffman-La Roche, 512 So. 2d at 735. First, the language in the handbook must be "specific enough to constitute an offer." Id. Second, "the offer must have been communicated to the employee by issuance of the handbook, or otherwise." Id. And third, "the employee must have accepted the offer by retaining employment after he has become generally aware of the offer." Id.

No one disputes that the second and third requirements are satisfied here; the parties' sole disagreement is whether the language of the Handbook was specific enough to constitute an offer. That inquiry is objective: "'Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions.'" Id. at 731 (citation omitted). A handbook containing discharge procedures is thus specific enough to constitute an offer when the parties' outward manifestations are "clear enough that an employee … could reasonably believe that, as long as he worked within the guidelines set out in the handbook, he would not be terminated until all procedures set out in the handbook had been followed." Id. at 736-37 (footnote omitted).

We thus turn to the language of the Handbook. Article 1 states that its "rules, regulations, and other administrative provisions for personnel administration are established for the information and guidance of all concerned," but also states that "[t]he rules herein established shall apply to all regular full-time, part-time, and classified employees of the City." Article 9 then specifies that "[t]he following procedures shall be followed

when the Department Head or Mayor proposes to … dismiss a regular, classified employee."[1]

Under Article 9, the City must first provide "written notice" that "shall advise the employee" of several aspects of what it calls a "Determination Hearing." The City must notify the employee that (1) "a Determination Hearing will be held and the date, time and place of such hearing"; (2) "the Determination Hearing will be held to consider the charges against the employee and the intent of the disciplinary action being taken against the employee"; and (3) "at the Determination Hearing the employee may be accompanied by anyone of his choosing and will be afforded the opportunity to respond to the charges orally or in writing."

Once the employee receives "written notice setting forth the charges against him/her and the intent of the disciplinary action,"[2] the City has

---

[1]It is undisputed that Davis was a "regular, classified employee," which the Handbook defines as persons who "are appointed/discharged based on recommendation by the Department Head and approved by the Mayor and City Council."

[2]It was suggested at oral argument that, because these provisions guarantee procedures relating to "charges" against an employee, no at-will employee could reasonably believe that they apply to him. But this

five working days to conduct a Determination Hearing, during which "the evidence against the employee shall be explained and the employee shall be afforded opportunity to respond orally or in writing." The Mayor then has three working days from the conclusion of the hearing to issue her decision, which "shall be promptly delivered to the employee." That decision must advise the employee (1) "[o]f the decision"; (2) "[o]f the date on which the discipline to be imposed, if any, is to become effective"; and (3) "[if] the decision is to … dismiss the employee, that the employee has a right to appeal such action" in writing within five working days of the employee's receipt of the decision, according to appellate procedures also included in Article 9. If the employee fails to appeal within that time, "all rights to appeal are extinguished."

Article 9 also applies to employees, such that the tenure "of every employee shall be conditioned on satisfactory conduct of the employee

---

argument confuses procedural and substantive guarantees. For instance, if an employer guarantees each employee a monthly statement of income earned by that employee, that guarantee applies even when the statement reads: "$0.00." Likewise, a guarantee of notice of charges against an employee is not empty or illusory just because the employer could state to its at-will employee: "There are no charges." This is especially true when, as here, such notice is a step along the path to other procedural guarantees, like an appeal.

and continued satisfactory performance of assigned duties and responsibilities." And it is "the duty of each employee to maintain high standards of conduct, cooperation, efficiency, economy and performance in work for the City."

The Handbook's pervasive use of "shall" demonstrates that the discharge procedures in Article 9 are binding. See Ex parte Brasher, 555 So. 2d 192, 194 (Ala. 1989) ("The word 'shall' … usually indicates that the requirement is mandatory."); see also Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts § 11 at 112 (Thomson/West 2012) ("Mandatory words impose a duty; permissive words grant discretion."). And the mandatory meaning of "shall" here is made clear by examining it alongside the Handbook's use of "may." See Ex parte Mobile Cnty. Bd. of Sch. Comm'rs, 61 So. 3d 292, 294 (Ala. Civ. App. 2010) ("Ordinarily, the use of the word 'may' indicates a discretionary or permissive act, rather than a mandatory act."). For instance, Section 4 of Article 9 provides a list of disciplinary actions that "may be implemented by the Department Head or his/her designee, or the Mayor." (Emphasis added.) One such disciplinary action is demotion: "An employee may be demoted from his/her existing position for cause

10

after consultation of the Mayor." (Emphasis added.) That is, the Mayor has discretion to demote or not. But, "[i]n such event, the procedure set forth below in Article 9, Section 5 <u>shall</u> be followed, and any such demotion <u>shall not</u> be subject to the grievance procedure set forth in GRIEVANCE PROCEDURE SECTION." (Capitalization in original; emphasis added.) The Handbook's precise use of mandatory and permissive language demonstrates that the City knowingly chose to draft some provisions that are binding and others that are nonbinding. The use of "shall" in the discharge procedures in Article 9 thus indicates that the City was bound to follow them.

An employee, faced with such exhaustive, mandatory language, "could reasonably believe that, as long as he worked within the guidelines set out in the handbook, he would not be terminated until all procedures set out in the handbook had been followed." <u>Hoffman-La Roche</u>, 512 So. 2d at 736-37 (footnote omitted). While the Handbook was "established for the information and guidance of all concerned," it strains common sense to read its step-by-step procedures as a nonbinding "mere general statement of policy," and a reasonable employee would not do so. <u>Id.</u> at

11

734. Accordingly, the Handbook was specific enough to constitute an offer.

The City makes several arguments in the alternative that it was nonetheless not bound to follow the discharge procedures in the Handbook. Each of these arguments is unavailing.

### 1. The Fact that Davis's Employment Remained At-Will

The City argues that there could not have been a contract with Davis because he was undisputedly an at-will employee. But whether the relationship was at-will is irrelevant to whether the City had to follow certain procedures if it decided to terminate his employment. That is, the <u>reason</u> for terminating an employment relationship is distinct from the <u>means</u> used to terminate that relationship. An employer and an employee are free to contract regarding procedures that each will follow when terminating the relationship without also agreeing to terminate that relationship only for just cause. Indeed, the Handbook's language suggests that it was drafted to achieve this result. It states: "The following are examples of causes that shall be sufficient cause for reprimand, suspension, demotion or dismissal." Although it qualifies its list of <u>causes</u> for discharge as a nonexclusive list of "examples," it does

not likewise qualify the procedures for discharge. Cf. Campisi v. Scoles Cadillac, Inc., 611 So. 2d 296, 299 (Ala. 1992). Our decision today thus leaves untouched our longstanding rule "that an employee contract at will may be terminated by either party with or without cause or justification." Hoffman-La Roche, 512 So. 2d at 728. But, at the same time, we emphasize that, where the language of an employee handbook sufficiently provides, "an employee handbook can represent a binding contract obligating an employer to satisfy certain conditions precedent to dismissing an employee." Harper, 892 So. 2d at 351.

### 2. Whether the City Disclaimed the Existence of a Contract

The City next contends that the Handbook could not have created a contract because, it says, the acknowledgment that Davis signed after receiving the Handbook contained language that unambiguously disclaimed that the Handbook was a contract. As the City notes, an employer that "does not wish the policies contained in the employee handbook to be construed as an offer for a unilateral contract ... is free to so state in the handbook." Hoffman-La Roche, 512 So. 2d at 734. Nor can a handbook that expressly disclaims the existence of a contract "reasonably be construed to constitute a unilateral contract of

employment, as a matter of law." <u>Abney v. Baptist Med. Ctrs.</u>, 597 So. 2d 682, 683 (Ala. 1992).

Indeed, this Court has repeatedly held that no contract exists when the employee handbook contains an unambiguous disclaimer of a contract. In <u>McCluskey v. Unicare Health Facility, Inc.</u>, 484 So. 2d 398 (Ala. 1986), our Court held that an offer did not exist when the employees signed an acknowledgment stating that "'[t]his Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment.'" <u>Id.</u> at 400. This Court later spotlighted the disclaimer from <u>McCluskey</u> as an exemplar of the kind of unambiguous statement that an employer should make "if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract." <u>Hoffman-La Roche</u>, 512 So. 2d at 734. And in <u>Abney v. Baptist Medical Centers</u>, this Court held that an employer had successfully disclaimed a contract by providing that "'[t]he policies in this booklet are not an expressed or implied contract of employment.'" 597 So. 2d at 682 (emphasis omitted). Accordingly, if the

City is correct that the acknowledgment disclaims any contract whatsoever, then the acknowledgment would knock out Davis's claim.

But the disclaimer at issue here bears little resemblance to the sweeping disclaimers in McCluskey and Abney. The text of the signed acknowledgment does not disclaim the existence of any contract. Rather, it uses qualifying language to disclaim only certain kinds of contracts. The acknowledgment first states that "nothing in this handbook can be interpreted to be a contract for employment for any specified period of time." (Emphasis added.) The qualifying language "for any specified period of time" indicates that the City sought to disclaim a contract for a certain duration of employment -- not any contract affecting the terms of the employment relationship. And this Court has refused to find "'the indefinite nature of the time period for performance to be a bar to enforcement of a unilateral contract.'" Stinson v. American Sterilizer Co., 570 So. 2d 618, 621 (Ala. 1990) (quoting Hoffman-La Roche, 512 So. 2d at 734). This language is thus not probative of whether a contract to follow the Handbook's discharge procedures exists.

The acknowledgment also states that the Handbook cannot be interpreted to "place a limitation on [Davis's] freedom or the City's

15

freedom to terminate the employment relationship at any time." If this provision is read in isolation from the Handbook to which it refers, it could be understood to mean that, at the drop of a hat, the City could discharge Davis as its employee with no or minimal notice. But "'we must examine the [text] as a whole and, if possible, give effect to each section.'" City of Pinson v. Utilities Bd. of Oneonta, 986 So. 2d 367, 371 (Ala. 2007) (quoting Ex parte Exxon Mobil Corp., 926 So. 2d 303, 309 (Ala. 2005)). And "'[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory.'" State ex rel. Allison v. Farris, 194 So. 3d 214, 219 (Ala. 2015) (quoting Scalia & Garner, Reading Law at 180). When we read the "place a limitation" statement in conjunction with the procedures the City promised to use to terminate the employment relationship, it is clear that the acknowledgment reserves merely the parties' right to terminate the relationship according to the Handbook's provisions at any time. Because the City need not give up its "freedom to terminate the employment relationship at any time" in order to follow the Handbook's discharge

procedures, sound interpretation precludes us from reading those procedures out of the contract.[3]

If the City wanted to disclaim a contract outright, it easily could have. The simplest way would have been to adopt the disclaimer used in McCluskey and reiterated in Hoffman-La Roche. But the City chose to disclaim only a contract for a certain duration or a contract that altered the at-will nature of the employment relationship, neither of which the Handbook's discharge procedures affect. The acknowledgment thus does not disclaim those procedures as contractually binding.

### 3. Whether the City's Promise Was Illusory

Finally, the City contends that the Handbook is not a contract because the City reserved the right to change its terms unilaterally when it provided in the acknowledgment that "the City retains the freedom to change the Policies and Procedures with the approval of the Mayor and City Council." But when an at-will employee continues employment after receiving a handbook with procedural guarantees, "'the employer is

---

[3]The City suggested at oral argument that Article 9 might still be relevant to the extent that it applies to a class of non-at-will employees. But the City did not make that argument below and has not identified any evidence in the record suggesting that such a class of non-at-will employees exists.

bound by those policies insofar as they have accrued to an employee for performance rendered while they were in effect and have not been excluded or modified by another valid contractual arrangement.'" Hoffman-La Roche, 512 So. 2d at 735 (quoting Langdon v. Saga Corp., 569 P.2d 524, 527 (Okla. Ct. App. 1976)). Consequently, "[t]he ability to later modify handbook provisions does not justify a disregard of currently valid provisions." Ex parte Graham, 702 So. 2d 1215, 1219 (Ala. 1997). Rather, "'[l]anguage in the handbook itself may reserve discretion to the employer in certain matters or reserve the right to amend or modify the handbook provisions.'" Hoffman-La Roche, 512 So. 2d at 735 (citation omitted).

The City points out that this Court has occasionally refused to recognize the existence of a contract when an employer retains the right to unilaterally change its procedures. See, e.g., Harper, 892 So. 2d at 351-52; Stinson, 570 So. 2d at 621-22. Thus, the City argues, its right to change the Handbook's procedures precludes any inference that those procedures are binding. But, in Harper and Stinson, any promises made in the handbook proved to be illusory because the handbook's language left the employer free to unilaterally deviate from the handbook's

provisions. See Harper, 892 So. 2d at 351 ("'The working rules and conditions set [out] herein are a guide and may vary slightly with the occasion as all problems vary.'"); Stinson, 570 So. 2d at 621 ("'Because of the great variety of the situations which may arise …, [the Company] reserves the right to make decisions related to employment in a manner other than as provided in this handbook.'"); cf. Campisi, 611 So. 2d at 300 ("'Individual circumstances may dictate varying courses of action, the important thing is to be fair and even handed.'" (emphasis added in Campisi)). It was thus unreasonable for the employees in those cases to believe that the employer was offering to be bound by the handbook's provisions or that the employer would not terminate the relationship except according to those provisions.

The right to deviate from a handbook's discharge procedures -- which the employers in Harper and Stinson expressly reserved -- is different from the right to amend or modify such procedures, which is all the City reserved here. Unlike the language in the handbooks in Harper and Stinson, the acknowledgment by Davis indicated that the City retained the "freedom to change the Policies and Procedures with the approval of the Mayor and City Council." That is not the same as the

right to unilaterally deviate from written "Policies and Procedures" at any time as circumstances may dictate. Because "[t]he ability to later modify handbook provisions does not justify a disregard of currently valid provisions," Graham, 702 So. 2d at 1219, the Handbook "may be characterized … as follows: 'I promise I will not dismiss you … without exhausting specified procedures[] unless I change this policy before you are discharged.'" Hoffman-La Roche, 512 So. 2d at 735 (quoting H. Perritt, Employee Dismissal Law and Practice 150 (1984)). The City's right to change the Handbook thus does not render it unenforceable as a contract.[4]

B. Davis's Motion for Partial Summary Judgment

---

[4]The City also cites Mack v. Arnold, 929 So. 2d 480 (Ala. Civ. App. 2005), a decision of the Court of Civil Appeals. We are, of course, not bound by Mack. But we find the City's use of it unpersuasive in any event. First, the analysis on which the City relies is dicta. As the Court of Civil Appeals made clear in the opinion, even if the employee had a winning contractual argument, he was always due to lose because the employer whom he sued -- the county sheriff -- was an officer of the State and therefore cloaked with State immunity. Id. at 484 n.2. Second, the county's modification right was immaterial to the central merits question in Mack -- whether the sheriff "entered into an employment contract with [the employee] by indicating that he would follow the termination procedures in the personnel manual." Id. at 483.

Davis filed a motion for partial summary judgment on the issue whether the City followed the procedures found in the Handbook. The court below did not reach the merits of Davis's motion for summary judgment because it held that the Handbook did not create a unilateral contract. Because we hold instead that the Handbook created a unilateral contract, the issue whether the City followed the procedures remains unresolved. We decline to consider that issue and leave it for the trial court to consider in the first instance on remand.

## Conclusion

We reverse the trial court's summary judgment in favor of the City. The Handbook was an offer for a unilateral contract, which Davis accepted by continuing his employment with the City. Because the Handbook constitutes a unilateral contract, we reverse the trial court's denial of Davis's motion for partial summary judgment and direct the trial court on remand to determine whether, in fact, the City violated the Handbook's terms.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Bolin, Shaw, Mendheim, and Stewart, JJ., concur.

Parker, C.J., concurs in part and concurs in the result, with opinion.

1210016

Sellers, J., dissents, with opinion, which Wise and Bryan, JJ., join.

PARKER, Chief Justice (concurring in part and concurring in the result).

I concur in reversing the judgment because the way in which the City of Montevallo ("the City") frames this case is untenable. Below and on appeal, the City has framed the issue as whether the City's Employee Handbook ("the Handbook") created a contract. The Handbook did, for the reasons in the main opinion.

The real issue here is what the terms of that contract were -- specifically, whether the Handbook's termination provisions were part of that contract. They ultimately were not, for reasons I will explain. But I cannot vote to affirm on that basis, because it has not been argued by the City here or below. Due process dictates that it is generally improper to affirm on a substantive basis relied on by neither the appellee nor the trial court. Cf. Liberty Nat'l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C., 881 So. 2d 1013, 1020 (Ala. 2003). On the other hand, I cannot fully concur in the main opinion, because its angle of response to the City's all-or-nothing position leads to a position that I believe cannot be sustained.

Under Alabama common law, at-will employment has two essential aspects: The employer may terminate it (1) at any time and (2) without

cause. See <u>Allied Supply Co. v. Brown</u>, 585 So. 2d 33, 35 (Ala. 1991) ("Employees at will ... can be terminated by their employer[] at any time, with or without cause or justification."). Moreover, the "at any time" aspect necessarily implies that "an employee at will can be discharged ... without prior notice," <u>id.</u>

Here, the Handbook's termination provisions are irreconcilable with both aspects of at-will employment. First, the provisions foreclose a right of the City to terminate at any time because they require pretermination notice-and-hearing procedures. Necessarily, those procedures require time and thus prevent the City from terminating at <u>any</u> time, i.e., immediately and without prior notice.

Second, the termination provisions are incompatible with a right to terminate without cause. As quoted by the main opinion, the provisions fundamentally and pervasively presume that the proposed termination is based on "charges" -- i.e., cause. On this point, the main opinion tries to thread the needle by positing that the provisions' guarantees have a procedural aspect and a substantive aspect. See ___ So. 3d at ___ n.2. On that view, the termination procedures are still required even though no "charges" are needed. The problem is that, without any "charges," the

procedures here simply cannot be satisfied: There is nothing to "consider" at the Determination Hearing, there is no basis for "disciplinary action," there is nothing for the employee to "respond to," and there is nothing to show by "evidence against the employee." And there is no point in the subsequent procedural guarantee of an appeal, because there is no basis for an underlying termination decision, nor any basis for asserting error on appeal. The particular termination procedures here are simply nonsensical without the requirement of cause; it is thoroughly embedded in them. And these provisions are not like a requirement of a monthly income statement, which does not presume that the content of the statement will be a positive number. Rather, these provisions are like the Due Process Clause of the 14th Amendment, whose procedural guarantee of "due process of law" presumes that its substantive object -- "life, liberty, [and] property" -- has real, nonillusory content.

Therefore, the Handbook's termination provisions necessarily rendered Davis's employment not at-will -- absent a disclaimer. There was a disclaimer here, of course; the question is its effect.

The acknowledgment disclaimer provided: "[N]othing in this Handbook can be interpreted … to place a limitation on … the City's

freedom to terminate the employment relationship at any time." That language expressly or implicitly incorporated both aspects of at-will employment. It expressly asserted the City's right to terminate "at any time." And "at any time" necessarily implied "without cause," because it meant that the City could terminate before any cause arose.

Hence, the termination provisions and the acknowledgment were in direct conflict. Whereas the termination provisions would fully entomb at-will employment, the acknowledgment would fully revive it. The main opinion attempts to harmonize the two terms by positing that the City did not give up its freedom to terminate at any time, only its freedom to terminate without pretermination procedures. But as I have explained, the freedom to terminate at any time is precisely what the procedures would foreclose. Procedures cannot occur in a timeless world of legal abstraction; they require time.[5]

---

[5]To be fair, a similar attempt to reconcile the irreconcilable seems to have been present in an unnecessary passing comment in this Court's seminal case. See Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 735 & n.4 (Ala. 1987) ("[A] unilateral offer made by [an] employer may be characterized ... as follows: 'I promise I will not dismiss you without cause (or without exhausting specified procedures) unless I change this policy before you are discharged.'" "Thus, in a very real sense, the employee is still an employee 'at-will.' He may still be dismissed for any reason, good

Accordingly, in my view, there is no way to reconcile the termination provisions with the acknowledgment. Under the irreconcilability canon of interpretation, the two knocked each other out of the handbook. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 189-90 (Thomson/West 2012). Without a contractual provision on point, the general rule of at-will employment applied. See Howard v. Wolff Broad. Corp., 611 So. 2d 307, 310-11 (Ala. 1992). Thus, Davis's employment remained at-will.

Importantly, this result obtains because the acknowledgment specifically contradicted the Handbook's termination provisions. Unlike in many prior cases, as the main opinion explains, the acknowledgment did not generally disclaim that the Handbook was a contract. Moreover, unlike a unilateral right to deviate from a handbook, the acknowledgment's provision of a unilateral right to amend the Handbook did not render its requirements illusory. Notably, in recognizing that deviation/amendment distinction, the main opinion implicitly disapproves this Court's contrary dicta in Harper v. Winston County, 892

---

or bad, as long as the provisions found in the company handbooks are followed ...." (citation omitted)).

So. 2d 346, 351 (Ala. 2004) ("If the employer reserves in the employee handbook the right to change policies unilaterally, its reservation operates as a disclaimer to negate any inference that the handbook constitutes an enforceable contract.").

To summarize: Davis's employment is at-will, not because the Handbook is not a contract, but because the specific at-will provisions of the acknowledgment and the specific termination provisions of the Handbook are irreconcilable such that they cancel each other out. If the City had so framed its argument, perhaps the result would have been different. At least my vote would have been.

SELLERS, Justice (dissenting).

I respectfully dissent. Alabama is a right-to-work state and employment is at-will; this means that "an employee contract ... may be terminated by either party with or without cause or justification." Hoffman-La Roche, Inc. v. Campbell, 512 So. 2d 725, 728 (Ala. 1987). However, under certain limited conditions, "an employee handbook can represent a binding contract obligating an employer to satisfy certain conditions precedent to dismissing an employee." Harper v. Winston Cnty., 892 So. 2d 346, 351 (Ala. 2004). But, "if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook." Hoffman-La Roche, 512 So. 2d at 734. Here, the employer did just that. The City of Montevallo ("the City") hired Ed Davis to manage the Montevallo Golf Course. Several years later, Davis received a copy of the City's Employee Handbook ("the Handbook"). The Handbook contained an acknowledgment, which Davis signed, stating in pertinent part:

> "I understand that nothing in this Handbook can be interpreted to be a contract for employment for any specified period of time or to place a limitation on my freedom or the City's freedom to terminate the employment relationship at any time. I also understand that the City retains the freedom

to change the Policies and Procedures with the approval of the Mayor and City Council."

The plain language of the acknowledgment disclaims both the creation of any contract and the placement of any limitation on the City's freedom to terminate Davis's employment. Utilizing any rules of grammar, canons for interpreting contracts, or the common usage of the relevant words and phrases yields the same result: the employer and employee are free to terminate their relationship at any time for any reason.

However, the main opinion seizes upon the phrase "for any specified period of time" in the acknowledgment, arguing that the City's concerns were merely durational. I disagree. First, disclaiming a contract "for any specified period of time" does not imply a contract "for no specified period of time." Additionally, the quoted provision is immediately followed by language maintaining the City's freedom "to terminate the employment relationship at any time" and to change the Handbook's procedures without the consent or knowledge of the employee. Read as a whole, the acknowledgment conforms with established Alabama law[6] and fully

---

[6]We have consistently held that including an unambiguous disclaimer or acknowledgment in a handbook is sufficient to avoid the creation of a contract. See McCluskey v. Unicare Health Facility, Inc.,

removes any cause of action an employee might have against the City occasioned by any provisions in the Handbook in its totality. Although in isolation the durational language may be construed ambiguously, that ambiguity fades when it is read, as we must read it, in the context of the entire provision. Having read and signed the acknowledgment, Davis could not reasonably interpret the Handbook as creating a contract to establish a cause of action against the City for failing to follow the Handbook's termination procedures.[7]

Even accepting, for the sake of argument, that the acknowledgment preempted only contracts of specific duration, the City was still free to deviate from the Handbook's termination procedures. The acknowledgment's language on this point is clear, straightforward, and direct, stating that "nothing in this Handbook can be interpreted … to place a limitation on my freedom or the City's freedom to terminate the

---

484 So. 2d 398 (Ala. 1986); Hoffman-La Roche, 512 So. 2d at 734; Abney v. Baptist Med. Ctrs., 597 So. 2d 682 (Ala. 1992); and Ex parte Beasley, 712 So. 2d 338 (Ala. 1998).

[7]The City's ordinance promulgated in 2015 disposes of any lingering doubt Davis may have harbored regarding his employment status. That ordinance explicitly stated that Davis was an at-will employee, specifically abrogating any contractual obligation that might have bound the City to follow the procedures in the Handbook.

employment relationship at any time." The main opinion concludes that this provision preserves the parties' right to terminate the employment relationship at any time, but only pursuant to the Handbook's procedures. But, that is not what the acknowledgment says. Adding language not included in the acknowledgment to impose the Handbook's provisions related to termination appears to be based on the principle that "'[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory.'" State ex rel. Allison v. Farris, 194 So. 3d 214, 219 (Ala. 2015) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 27 at 180 (Thomson/West 2012). However, rather than resolving a contradiction, the main opinion creates one to animate and apply the Handbook's procedures to prevent at-will termination of employment. The term "any time" is unambiguous and would include periods before and during the termination proceedings. If an employee cannot be terminated during those times, then that is inherently a limit on the City's freedom to terminate employment "at any time," directly contradicting the acknowledgment. I see no need for such a strained interpretation of such clear language.

Reading the acknowledgment as a whole and interpreting its provisions with an eye toward compatibility, the acknowledgment disclaims the Handbook's creation of any contract or any limitation on the City's freedom to terminate the employment relationship. Although the Handbook's procedures provide guidance on the method of termination, the City, per the terms of the acknowledgment, is not bound by them. Accordingly, I would affirm the judgment of the trial court granting the City's motion for a summary judgment.

Wise and Bryan, JJ., concur.